168 So.2d 236

**Frank ROMANO et al.**

**v.**

**Anthony ROMANO et al.**

6 Div. 959.

Supreme Court of Alabama.

Sept. 24, 1964.

Rehearing Denied Nov. 9, 1964.

as an infant. At the time of her death on 2 November 1961, she was over 80 years of age. For several years prior to her death she had been in ill health due to heart trouble, arthritis, and the afflictions of old age. In her latter years she was hospitalized a number of times, and was periodically confined to a wheel chair.

The deceased, Annie Romano, had ten children and eight were living at the time of her death.

On 9 November 1961, Frank Romano, one of the sons of the deceased, and an appellant herein, filed his petition in writing under oath, in the Probate Court of Jefferson County, Alabama, Bessemer Division, for the probate of the will of his deceased mother, Annie Romano.

The purported will was filed along with the petition and 28 November 1961 was the day set for hearing the testimony to establish said instrument as a will.

On 28 November 1961, the contestants filed their contest in the Probate Court and demanded that the same be transferred to the Circuit Court for trial. The contestants demanded a jury trial. On that date the Judge of Probate entered an order transferring the contest to the Circuit Court.

The proponents and contestants are all children and grandchildren of the deceased.

Under the purported will three of the deceased's children and three of her grandchildren were bequeathed one dollar each. The residue was given to Frank Romano, in trust for at least ten years and at the expiration of such period, the trust to continue for such additional time as Frank Romano may desire, not to exceed ten years. One year's net income is at all times to be retained by the trustee and the excess paid to Frank Romano, Joe Romano, Mike Romano, and Marie Romano Antonio, the named beneficiaries.

Frank Romano was designated as executor, and in his capacities as executor

---

Robt. N. Pratt and Brown & Brown, Bessemer, for appellants.

W. Gerald Stone, Lee Bains and Huey, Stone & Patton and Ling & Bains, Bessemer, for appellees.

PER CURIAM.

This is an appeal from a judgment entered pursuant to a jury verdict declaring that an instrument executed on 29 August 1959, purporting to be the last will and testament of Annie Romano, deceased was not the last will and testament of Annie Romano, deceased.

Counsel representing the appellants on appeal did not participate in the proceedings below.

The evidence shows that Annie Romano, a native of Italy, was brought to this country

and trustee he is relieved from giving bond, and is given full power of management, control, and disposition of the estate, including full power of sale, investment and reinvestment. The will also provides that the executor shall not be required to file an inventory or to make a final settlement of the estate.

In an opinion heretofore issued in this appeal we inadvertently considered this case as arising under the provisions of Section 64, Title 61, Code of Alabama 1940, relative to a will contest in the Circuit Court in Equity within six months. Actually the will contest was transferred to the Circuit Court at law under the provisions of Section 63, Title 61, Code of Alabama 1940. Discovering this mistake, we ex mero motu restored the appeal to the rehearing docket for further consideration. The opinion heretofore issued on 18 June 1964 in this appeal is hereby withdrawn, and the following opinion substituted in lieu thereof.

■ The record in this case is a lengthy one, totalling more than 1,000 pages. The testimony taken below is voluminous. The issue presented by the evidence was solely a question of fact as to whether Frank Romano had exercised undue influence upon his mother, Annie Romano, to procure the execution of the purported will. No useful purpose would be served in setting forth this factual situation. Section 66, Title 13, Code of Alabama 1940. We observe, however, that after a careful consideration of the evidence presented below, we are clear to the conclusion that it is ample in its tendencies to support the verdict and judgment rendered and entered below. Such conclusion renders nonmeritorious appellant's assignments of error based on several grounds of the motion for a new trial questioning the sufficiency of the evidence to support the verdict and judgment.

Assignments of error Nos. 1 and 5 question the action of the court in overruling appellant's demurrers to the contestant's petition. The grounds assigned in support of the demurrer were general in nature.

The petition averred that "the instrument sought to be probated is the product of, and the proximate result of, the undue influence of said Frank Romano exercised on said deceased and does not constitute the last will and testament of said deceased."

Counsel for appellant argues that the doctrine of Barksdale v. Davis, 114 Ala. 623, 22 So. 17, to the effect that the facts constituting undue influence must be distinctly averred, is the sounder rule, and should be followed.

■ This doctrine was specifically overruled in Alexander v. Gibson et al., 176 Ala. 258, 57 So. 760, and it was held that a general averment that the execution of a will was procured as a result of undue influence was sufficient, and facts showing the exercise of undue influence need not be set forth. This rule has been reiterated in numerous of our cases since Alexander v. Gibson, supra, and some of these being Coghill v. Kennedy et al., 119 Ala. 641, 24 So. 459; Ross v. Washington, 233 Ala. 292, 171 So. 893; Borton v. Borton, 225 Ala. 457, 143 So. 468; Mindler v. Crocker, 245 Ala. 578, 579, 18 So.2d 278. The court therefore did not err in overruling the demurrer in this aspect and assignments of error Nos. 1 and 5 are without merit.

Assignments 6, 10, and 11 question the admission into evidence over appellant's objections of two deeds purportedly executed by the testatrix. Both deeds were dated 22 June 1960, some ten months after the alleged execution of the will on 29 August 1959.

The grounds of objection to the introduction of these deeds were that they related to separate and distinct transactions, and were not involved in these proceedings.

One deed conveyed to testatrix's daughter, Marie Romano Antonio, a fifty foot strip off the rear of Mrs. Romano's homeplace. Mrs. Antonio's house and lot abutted on the rear of Mrs. Romano's lot.

The second deed conveyed the testatrix's house and lot to Frank Romano and Mike Romano and their respective wives.

The first deed to Mrs. Antonio is letter perfect with no erasures or alterations of any kind.

The deed to Frank Romano and Mike Romano and their wives contained obvious alterations of many kinds. Where the names "Frank Romano and Dorothy Romano" appear there had been previous erasures. The name of Mike Romano and his wife are not level with the other typing in the same line. When asked what had been erased at the places showing erasures in the deed, Frank Romano replied, "I don't know."

At the time Mrs. Romano signed these deeds, she had just returned from an extended hospitalization. A nurse was in constant attendance with her during the day. This nurse testified that as to the deed to Frank and Mike Romano and their wives, that Frank came to his mother's home a few days after she had signed the deed conveying the strip to Mrs. Antonio, and told his mother that there had been a mistake in this deed, and he had a second one correcting this mistake.

The deed to Mrs. Antonio was delivered to her in about five days. The other deed was not recorded until 20 October 1960, about fifteen days prior to Mrs. Romano's death, when she was in an extremely poor physical condition. The other children did not know of the existence of this deed. Further, the testatrix continued in possession and dominion of the property after the execution of the deed to the same extent as before the execution of the deed.

■ Undue influence and fraud in procuring the execution of a will being subtle and ofttimes difficult or impossible of direct proof, evidence from which such activities can be reasonably inferred must of necessity be admitted in cases of this sort. Clearly the documents admitted tended to shed light on the bona fides of Frank Romano's dealings with his mother, and his relationship with her, and the confidence and trust reposed by her in Frank, and his dominance in this relationship.

■ That some ten months had elapsed between the date of the execution of the will and the date of the deeds went only to the weight of this evidence, and not to its admissibility. The evidence had a particular bearing upon the issue of undue influence, and was properly admitted. See 124 A.L.R. 433, 434 for apt cases.

Assignments 7 and 9 assert error on the part of the court in overruling objections to a question propounded to contestant's witness, Joe Romano, a son of Mrs. Romano and one of the beneficiaries under her will, relative to a conversation he had with Mike Romano, one of the grantees in the purported deed just mentioned above. Mike Romano was dead at the time of the trial.

The question was: "Now then did you talk to Mike about it?" (The deed of Mrs. Romano conveying her homeplace and other properties to Frank Romano, Mike Romano, and their respective wives.)

The ground interposed to the question was that it sought evidence violative of Section 433, Title 7, Code of Alabama 1940, commonly referred to as our Dead Man's Statute. Counsel's argument in brief is also to this effect.

We pretermit consideration of this ground for the reason that the question merely sought evidence as to whether Joe Romano had talked with Mike Romano about the deed, and did not seek to elicit the content of the conversation.

In response to the above questions, the witness answered:

"Well, you know, all this thing has been brought about, and I knew about the deed and the Will and Mike called me and I told Mike, we had a telephone conversation. I didn't go out there to see Mike. I told him that Frank had gone over—. What happened, Frank had gone down there to try to—Frank wanted to get this thing straightened and I thought I was going to be—I thought it was going to be straightened up and he went on down there and

talked to Mike and he and Mike got in one more Hell of an argument."

██ The confusion and content of this answer renders it innocuous. Primarily however, the answer was not responsive to the question. There was no motion to exclude. The question to which the irresponsive answer ·was made was not itself objectionable. A motion to exclude is the proper procedure to remove an irresponsive answer to a question which is not objectionable. Shelley v. Clark, 267 Ala. 621, 103 So.2d 743; Southern Cement Co. v. Patterson, 271 Ala. 128, 122 So.2d 386.

Assignments of error 7 and 9 are therefore without merit.

Assignment of error No. 8 relates to an incident occurring when the court, at the jury's request, gave to the jury additional instructions as to what constitutes a confidential relationship.

The court did so instruct the jury, and at the conclusion ·asked if there were any exceptions. The record then shows the following:

"Mr. Bains" (one of the attorneys for the appellees): "Judge, I was going to write out an explanatory charge, the relationship of son and mother or mother and son or parent and child is a confidential relationship, as a matter of law. The only question involved there would be whether the son was a dominant spirit because it is a confidential relationship, as a matter of law.

"The Court: I belive it is. Son and mother, parent and child, that is a confidential relationship; yes."

The court then asked: "Mr. Bains where is your charge?" to which Mr. Bains replied: "That is all right." The charge was apparently never presented to the court.

The court then asked if there was any exception "to that part of the charge" to which the attorney for the appellants answered: "No sir, no sir."

Counsel for appellants, in brief, insist that the above statement in the presence of the jury was grossly improper and highly prejudicial and if it be considered as a request for an additional written instruction, it was not reduced to writing and was therefore in violation of Section 273, Title 7, Code of Alabama 1940.

██ Actually, in its oral instructions to the jury, the court had given illustrations of confidential relationships such as attorney and client, doctor and patient, etc., but omitted to mention parent and child. Mr. Bains' remark merely called attention to this omission, and the court extended its instructions to cover this additional confidential relationship. This was a correct statement of the law, Raney v. Raney, 216 Ala. 30, 112 So. 313, and we find nothing prejudicial therein.

██ Further, no exception was taken by counsel for appellants in the premises, but on the other hand, counsel announced he desired no exception. In this state of the record, there is nothing before us for review. Woodward Iron Co. v. Earley, 247 Ala. 556, 25 So.2d 267; National Biscuit Co. v. Wilson, 256 Ala. 241, 54 So.2d 492.

Assignment No. 18 asserts error because of the giving of appellee's requested written charge No. 5.

Appellant's counsel argues the charge is faulty because it fails to specify that the activity of the beneficiary standing in a confidential relationship must be an "undue" activity.

██ The charge does specify that the jury, in additon to the confidential relationship, should be reasonably satisfied that "Frank Romano actively participated in the preparation and execution of said written instrument * * *." This denotes more than a mere passive acquiescence in the preparation and execution of the will. The charge correctly stated the legal principles applicable, and was properly given to the

jury. Chandler v. Jost, 96 Ala. 596, 11 So. 636; Bancroft v. Otis, 91 Ala. 279, 8 So. 286.

Assignment of error No. 13 asserts error in the admission into evidence of the deposition of Robert N. Pratt, he then being present in court.

In argument counsel for appellants assert the appellants had no opportunity to object to the introduction of the deposition, and did not waive their right to object.

The record discloses that the deposition was received in evidence without objection. Pratt was present in court and was one of the attorneys for the appellants. Certainly the opportunity to object was open, but was not exercised. The deposition being admitted without objection, no error can be predicated on this procedure.

The record is free from error probably injurious to any substantial rights of the appellants, and the judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, MERRILL and HARWOOD, JJ., concur.